JAI8JUCC

1    UNITED STATES DISTRICT COURT
     SOUTHERN DISTRICT OF NEW YORK
2    ------------------------------x

3    JHOANA JUCA, et al.,

4                    Plaintiffs,

5              v.                          19 Cv. 9427 (ER)

6    RICHARD CARRANZA, et al.,

7                    Defendants.

8    ------------------------------x
                                       New York, N.Y.
9                                      October 18, 2019
                                       2:00 p.m.
10
     Before:
11
                       HON. EDGARDO RAMOS,
12
                                         District Judge
13
                            APPEARANCES
14
     BRAIN INJURY RIGHT GROUP, LTD.
15        Attorneys for Plaintiff
     BY:  PETER G. ALBERT
16
     NEW YORK CITY LAW DEPARTMENT
17   BY:  ANDREW J. RAUCHBERG
          LILLIAN ESPOSITO
18

19

20

21

22

23

24

25

JAI8JUCC

1          (Case called)

2          THE DEPUTY CLERK:  Counsel, please state your name for

3     the record.

4          MR. ALBERT:  Good afternoon, your Honor.  Peter

5     Albert, from the Brain Injury Rights Group, for the plaintiffs.

6          THE COURT:  Good afternoon.

7          MR. RAUCHBERG:  Good afternoon, your Honor.  Andrew

8     Rauchberg, from the New York City Law Department, on behalf of

9     the defendants.

10          MS. ESPOSITO:  Good afternoon, your Honor.  Lillian

11     Esposito, on behalf of the New York City Law Department.

12          THE COURT:  Good afternoon to you both.

13          So this matter is on for a show cause hearing on

14     plaintiffs' request for a preliminary injunction.  I have

15     received the parties' papers.

16          Mr. Albert, do you wish to be heard further?

17          MR. ALBERT:  Briefly, your Honor.

18          THE COURT:  You can remain seated.

19          MR. ALBERT:  Briefly, this case -- and I will try to

20     be brief and succinct -- it comes under the federal Individuals

21     with Disabilities Education Act, and, specifically, Section

22     1415(j) of that act, which is sometimes referred to as the

23     state court or pendency provision.  And, in essence, without

24     quoting the statute, which is pretty simple with respect to the

25     language, is that, once a parent or a district commences an

JAI8JUCC

administrative due process proceeding, there is an automatic
injunction that's put into effect, essentially to protect the
student from being changed, from being moved from one
educational placement to another.  That was the congressional
intent.

        In this case, when that happened, during the
administrative proceedings, and I won't go through each of the
cases, but essentially in the cases there was almost a
bifurcation of the administrative process.  The first part of
the process is to determine what the student's pendency is.
Where is that student right now?  Where is that student
receiving his or her educational program?  And then the second
piece, which follows from that, and is independent with respect
to standards and determination, is:  What is an appropriate
placement, in essence, for that student?  Did the school
district provide something appropriate?  Did the parents
provide something that was appropriate?  Where is the balance
of equities, etc.?

        But with respect to the pendency issue, and again
1415(j), 1415(j)is somewhat unique in that although it's
referred to as an injunction, it's an automatic injunction, and
the typical standards and criteria required for an award of a
preliminary injunction -- likelihood of success on the merits,
irreparable harm -- are not needed.  And there's a number of
cases that are cited in our papers, Second Circuit decisions,

JAI8JUCC

1     that go back to the early 1980s with respect to that issue.

2                 In this particular case, this is really an enforcement

3     action.  So this case is kind of after the administrative

4     hearing officers have found pendency and have ordered pendency,

5     meaning that the student will stay wherever they are and that

6     the district, in this case the DOE defendant, has to fund that

7     placement.  Because the funding of the pendency placement is

8     congruent with the pendency placement itself.

9                 In this case, there were six students, five of whom

10    received pendency orders or decisions, which the hearing

11    officer stated, this is your pendency placement and the DOE

12    needs to fund it.  That hasn't happened, or it's happened only

13    in part.  And it's not necessarily a dispute regarding the

14    facts, because in the DOE's own papers they readily admit that

15    there are funding items that have not been paid.

16                Now, the parents --

17                THE COURT:  But that are being processed?

18                MR. ALBERT:  They are being processed.

19                Now, the parents don't expect instantaneous payments.

20                THE COURT:  That's what Mr. Ashanti was requesting.

21                MR. ALBERT:  I don't think he was asking for

22    instantaneous, but certainly the automatic injunction of

23    1415(j) is immediate, it's immediate relief.

24                Now, immediate relief, clearly, a couple of days would

25    certainly be realistic.  But we have had a prior case where it

JAI8JUCC

1    was months and months of parents waiting for the funding.  In

2    this case, again, most of the pendency orders were issued in

3    August, early September, and payments haven't been received.

4              THE COURT:  But the automatic injunction doesn't speak

5    to payment, it speaks to the actual services that the child is

6    receiving.

7              MR. ALBERT:  Correct.  The pendency essentially means

8    the elements, if you will, of the student's program.

9              THE COURT:  Right.

10             MR. ALBERT:  Class size, what kind of services the

11   student will actually get, not necessarily the location and

12   things along that.  That can become an issue, but for purposes

13   of pendency in these cases, the hearing officer, the

14   administrative hearing officer, made those determinations based

15   on either papers or evidence that was submitted, or on a basis

16   of a consensus by and between the parties.

17             THE COURT:  Mr. Albert, let me ask you this, because

18   the city tells me that in this case, with respect to the

19   students that are before me, with the exception of one, prior

20   to this action having started, the city told you that pendency

21   is not an issue and that payments would be made.  Since this

22   matter has been filed, the city came in and said that pendency

23   is not contested and the payments are being processed, some

24   have already been made, the others we have told them when they

25   are likely to receive it.  I got papers yesterday from the city

JAI8JUCC

1    telling me that most of the payments have been made, and those

2    that have not been made have begun the process of being

3    processed; and, by the way, they are asking for preliminary

4    injunction with respect to invoices that we got a day before,

5    or two days before they filed this action.

6              Is any of that inaccurate?

7              MR. ALBERT:  I believe the majority is accurate.  It

8    may kind of conflate some of the issues as to what is being

9    paid and what is not being paid, but it's the plaintiffs'

10   position that the DOE can't pick and choose which cases they

11   are going to pay on; they can't pick and choose the schedule

12   that they are going to make those payments.  Again, I don't

13   mean to be flippant, but certainly promises promises, you know,

14   that's not going to cut it.  These are administrative orders by

15   hearing officers that said, You, DOE, must do X.

16             THE COURT:  And they are telling me that they are

17   doing it.  But let me ask you this.  I see that you are an

18   attorney with the Brain Injury Rights Group.

19             MR. ALBERT:  Correct.

20             THE COURT:  I take it you do this type of work as part

21   of your --

22             MR. ALBERT:  I also serve as an impartial hearing

23   officer.

24             THE COURT:  OK.

25             MR. ALBERT:  So I have been doing this, I want to say

JAI8JUCC

1    more years than I want to publicly admit, but probably 20 to 25

2    years.

3              THE COURT:  Then you know a lot more about this than I

4    do.  So let me ask you this.  Is the city treating iBRAIN

5    differently than it is treating any other provider of special

6    education services?

7              MR. ALBERT:  I can't speak on behalf of DOE, but I

8    suspect there may be some foot dragging on the part of DOE.

9    One of the exhibits that we have submitted is that the DOE has,

10   I don't know if it's an unwritten policy or written policy with

11   respect to what they require for these kinds of payouts.  If

12   you examine New York State Education Law, if you examine the

13   IDEA, there is no such requirements.  In essence, they are

14   almost granting themselves a stay from these orders, that once

15   the impartial hearing officer issues his or her order, payment

16   should be -- again, I don't think there is any expectation it's

17   instantaneous, but it should be immediate, and I will define

18   immediate within a few days.  This shouldn't be seven, ten

19   business days or beyond.

20             THE COURT:  And you get that from where, that

21   guideline?

22             MR. ALBERT:  A little bit of common sense.  There is

23   no requirement with respect to when the implementation should

24   be done.  Some of the hearing officers will put in their order

25   by X date you must do such and such.

JAI8JUCC

1          THE COURT:  Hearing officers will put in by such and

2    such payment must be made?

3          MR. ALBERT:  Correct.  It's not uncommon, but I think

4    it's more uncommon than common that that be done.  Typically

5    what a hearing officer might do with respect to a date is to

6    direct the DOE, if there is going to be sort of a remand back

7    to the district to address an issue that wasn't fully developed

8    at the administrative hearing, to require the district to

9    reconvene their committee on special education within two

10   weeks, 30 days, whatever the time period is.

11         THE COURT:  So I go back to my question.  Do you know

12   whether the city is treating iBRAIN differently than any other

13   such provider, like iHOPE or any other school with which you no

14   doubt are familiar?

15         MR. ALBERT:  I don't know for a fact, and it would be

16   difficult for me to say cavalierly in open court, yes, they

17   treat them differently.  We suspect they do.

18         THE COURT:  Based on?

19         MR. ALBERT:  Based on the fact that it's a small bar

20   that deals with these kinds of cases, and I am not aware of any

21   other law firm or lawyers who practice in this area who have

22   had the number of, I will say, issues or concerns about the

23   prompt payment, the prompt, really, compliance with impartial

24   hearing officer orders.  So I can't present to the Court, yes,

25   I know for a fact.

JAI8JUCC

1          THE COURT:  Again, I believe the representation was

2     made that the city generally is able to pay these things off

3     within 35 days.

4          Now, you mentioned common sense earlier.  What should

5     I use as a guideline?  35 days from the bureaucracy of the City

6     of New York, New York City Board of Education, 35 days to me

7     seems fairly reasonable.  Why should I find otherwise?

8          MR. ALBERT:  Well, for a couple of things.  For some

9     of these orders it's beyond 35 days.  Number two, some of the

10    payments are done on a piecemeal fashion.

11         THE COURT:  What do you mean by that?

12         MR. ALBERT:  For a pendency order, a pendency order

13    might have several components.  It might have a component for

14    tuition.  There might be a component for nursing services.

15    There might be a component for transportation services.  They

16    are all required by DOE's rules to have separate invoices and

17    separate affidavits in support of the payment.

18         When an impartial hearing officer directs that the

19    student's pendency is at X location, and orders the DOE to fund

20    that pendency, an impartial hearing officer never says, Oh, and

21    you need to support it by whatever process the school district

22    has.  This is an administrative order under federal law and

23    under state law.

24         THE COURT:  So are you suggesting that where an

25    impartial hearing officer directs the DOE to provide not only

JAI8JUCC

1    the tuition, but nursing and transportation for a child, that

2    the city simply pay over an amount without requiring that the

3    providers provide adequate invoices for those services?  Is

4    that a business practice you want the city to adopt?

5         MR. ALBERT:  No.  Typically, during these

6    administrative hearings, there is a submission of those things,

7    an affidavit of a tuition payment, usually a copy of an

8    enrollment agreement, a transportation agreement.  So this

9    documentation already exists and ordinarily assists the

10   impartial hearing officer to do that.

11        Now, again, this is just for pendency.  In other

12   words, this is a payment so that the student is allowed to stay

13   where they are to continue to receive whatever services they

14   were getting, until such time that there is a full adjudication

15   of the student's rights.  So this isn't a blank check and say,

16   for the next ten years you have a free ride.  That's not the

17   case.

18        THE COURT:  Let me ask you this.  Is it generally the

19   case -- again, across the board, not just at iBRAIN but with

20   respect to every child who is in an IEP, with respect to every

21   child that the Board of Education is required to provide these

22   services to -- that they require of every school and of every

23   provider that an invoice be submitted before payment is made?

24        MR. ALBERT:  I don't know what the DOE's requirements

25   are with respect to others, but for pendency and for the

JAI8JUCC

1    provision of special education, it's done on an annual basis.

2    So it's conceivable and for some of our students, if you look

3    at some of the papers, there are multiple cases for consecutive

4    years.  They can evolve into, you know, one year rolls into

5    another year.  So pendency can go from, let's say the '17-'18

6    school year, it can continue into the '18-'19 school year if

7    the substantive part of that determination has not been

8    resolved.

9         So to answer your question, yes, it could encompass

10   two years, but it's rare that that happens and it's rare that

11   it would ever go beyond that.

12        THE COURT:  As far as I know, this case is about

13   payment.  My question was whether every other provider, aside

14   from iBRAIN, is absolved of the obligation to submit an invoice

15   for payment?  Do you know?

16        MR. ALBERT:  I would have no way of knowing that.

17        THE COURT:  Do you have clients who attend other

18   schools besides iBRAIN over the course of your career?

19        MR. ALBERT:  Not in New York City, no.

20        THE COURT:  Where?  Do you have clients in other

21   cities that are receiving these types of IDEA benefits?

22        MR. ALBERT:  Currently the Brain Injury Rights Group

23   is only dealing with students who attend who are residents of

24   New York City.  So I would say, only with respect to this group

25   and others, it's a New York City centered problem.  Those

JAI8JUCC

1   issues typically, in my experience, don't exist elsewhere.

2           THE COURT:  Go ahead.  You can finish your

3   presentation.

4           MR. ALBERT:  With respect to that, as your Honor

5   pointed out, DOE has essentially admitted that there are

6   payments owed.  And under those circumstances, again, it's not

7   discretionary on their part.  If a hearing officer issues an

8   order of pendency, they are supposed to pay.

9           THE COURT:  The representation is that they are

10  paying.

11          MR. ALBERT:  Well, pieces of it, and in some cases not

12  at all.

13          THE COURT:  OK.  Anything else?

14          MR. ALBERT:  That's it.  Thank you.

15          THE COURT:  Mr. Rauchberg.

16          You can remain seated.

17          MR. RAUCHBERG:  Your Honor, I can provide some clarity

18  for some of the issues the Court was posing to plaintiffs'

19  counsel.

20          For one thing, and I want to answer this very clearly,

21  there is no different treatment for the students who attend

22  iBRAIN as compared to students who attend other schools or who

23  remain within the public system.  No difference at all.

24          As I think your Honor suspects, we require invoices in

25  every instance, and even as school years pass, if a new school

JAI8JUCC

1    begins and students are continuing to receive services, even

2    from the same providers or even at the same school, we continue

3    to require invoices.  We like to see proof of attendance, the

4    rates of services, etc.  And that is a practice for every

5    student, every provider, etc.

6            And there is an interesting thing that came up with

7    the Court's discussion with plaintiffs.  Because you asked if

8    the plaintiffs feel that they are being treated differently, if

9    iBRAIN students are treated differently.  And one of the

10   exchanges I had with plaintiffs' counsel as we were leading up

11   to this and I was trying to convey to plaintiffs' counsel and

12   Mr. Albert's colleague, that there was no need for a federal

13   action here, there was no need to seek federal enforcement

14   because, as your Honor has noted, there is not a dispute, at

15   least in the instance of five of six students, because payments

16   were going to be made.  And one of the things I was told was,

17   make these payments by this date or we will go to court.  And I

18   asked, Why should we treat these students differently?  Why

19   should we treat the students that attend iBRAIN differently?

20   Why should we pay their invoices before we pay the invoices of

21   the thousands of other students in special education?  That

22   question was never answered, of course, because it has no fair

23   answer.

24           Plaintiffs are asking for special treatment here.

25   They are not here because they are being treated unfairly or

JAI8JUCC

differently from other students; they seem to expect that they

should get different treatment.  And as your Honor noted, one

of the things that is explicitly requested in the papers is

plaintiffs want immediate payment of invoices.

        Now, it seems that Mr. Albert kind of backed away from

that a little bit, and I do appreciate that.  Because I see

nothing in the case law that says that payments must be made

immediately, or instantaneously, or anything of the sort.  And

at some point in time we have to have some common sense applied

here and recognition, as Judge Hellerstein noted in a very

similar case that was brought by the same advocates on behalf

of some of the same plaintiffs over the summer seeking, again,

immediate payments.  And Judge Hellerstein observed, it takes

time to process an invoice and that is to be expected.  I think

that was a very straightforward response to their application,

and I think it applies here as well.

        With the five students who we don't have any

disagreement about, and we set this forth very clearly before

they came to court, for those five students the payments will

be made.  And by my calculations, based on what Ms. Kapoor from

the DOE represented -- she runs the impartial hearing

implementation unit and her declaration was with our papers

that we put in yesterday -- she pointed out what payments she

has made.  And the only thing that I see that has not been paid

are in instances when we don't have invoices.  In every other

JAI8JUCC

1    example, whether it's transportation or tuition, the payments

2    have either been made or they have been processed.

3           Now, there is a lag.  When we process a payment the

4    money doesn't instantly appear at the vendor.  It does take

5    seven to ten days after the payment is populated.  And you know

6    what, Judge, sometimes when the possessing happens at the DOE,

7    it doesn't populate for another business day.  That happens

8    sometimes as well.  And in those instances it's probably

9    correct that it's actually eight to eleven business days later

10   that the payment is received.  That sort of thing happens.

11          I would also like to note that this, too, is the way

12   we pay everybody.  This is the system we use for everyone when

13   the obligation is imposed by an impartial hearing.

14          Now, again, plaintiffs say they wonder if they are

15   getting treated differently.  I point out, if they are hearing

16   from other advocates that they go about this differently, it's

17   because not a single other advocate that I'm aware of thinks

18   they need a federal court to issue a preliminary injunction to

19   force the department to make these payments, because it isn't

20   necessary.  And because I work for the DOE so frequently, I am

21   in contact with many attorneys at the parents' bar, and what

22   they do is they reach out to me and they say, a payment hasn't

23   been made here, can you look into it?  I do.  Sometimes it's an

24   oversight and we correct it, and we correct it through that

25   exchange and a separate federal action is never necessary,

JAI8JUCC

1    except for these particular advocates.

2              I do not think the Court needs to issue a ruling here

3    because there is no need for this action at all.  This is the

4    process that we are applying fairly.  And I appreciate what the

5    Court noted about our process that we make these payments

6    within 35 days.  And I can tell you from my own experience as

7    well, Judge, nothing happens faster with my clients when the

8    comptroller issues a check.  We follow the CPLR and we do that

9    within 90 days.  These payments are made quickly, in part,

10   because we recognize these are services for special education

11   students, the payments should be made promptly, and we want to

12   make sure there is no interruption of services.

13             Here, there is no allegation that any services have

14   been interrupted.  There is no allegation that any services

15   have been deprived of any student.  Even a student where we

16   have a disagreement, there is no allegation that that student

17   isn't receiving the services that she is entitled to, or

18   allegedly entitled to.  We have a disagreement about it, but

19   there is no dispute that she is getting the services, and there

20   is no allegation that she is at risk of losing those services

21   at any time.

22             Now, if the plaintiffs think that our position or the

23   department's position at the impartial hearing is unreasonable

24   or indefensible or untenable, well, that is the business we

25   have chosen.  The hearing officer will rule on that and we will

JAI8JUCC

1    adhere to that ruling.  That is the process.  And I think it's

2    actually operating expeditiously in the instance of these

3    students.  And so I vehemently object to the suggestion that

4    these students or the students who attend this school receive

5    anything but the same fair treatment that all the students who

6    are our responsibility are receiving.

7        I also oppose the idea that a federal action was

8    needed in this at all or that we need any injunctive relief

9    from the Court.  Because in this instance the facts are what is

10   most important here, and the facts are that we have made these

11   payments, and to the extent that we have not received invoices,

12   we will process those in the usual course of business.  And the

13   law requires nothing more.

14       THE COURT:  What about with respect to Kate A, the

15   sixth child?

16       MR. RAUCHBERG:  With Kate A, as I said a moment ago,

17   we do have a disagreement about what constitutes pendency.

18   There the student is receiving the services.  I think that is

19   very important.  And there is no allegation that she will not

20   receive the services in the future.  To the extent that there

21   is a dispute, it's already been briefed before an impartial

22   hearing officer who is assigned to the underlying hearing.

23   There is a date on the calendar for next week.  It may be that

24   the impartial hearing officer will rule on the papers, or it

25   may be that there will be some argument and a ruling

JAI8JUCC

1    thereafter.

2           Now, the parties have a right to appeal to a state

3    review officer.  That process is available.  But I suspect that

4    this will be resolved very soon, and we will either have a

5    ruling that says pendency is one thing or it's another.  By the

6    way, the litigation on the merits of their claim, that they are

7    entitled to payment for the '19-'20 school year at iBRAIN,

8    well, that will continue, and they will make their case and

9    they will either prevail or they won't.  Again, that is the

10   system.  It is ponderous, the courts have observed that.  But

11   it's moving along for the student.  And because the student is

12   receiving the services, I think there is no risk for her or any

13   potential of harm to her.  There I feel strongly about that.

14          THE COURT:  Mr. Albert, do you wish to respond?

15          MR. ALBERT:  Yes, just briefly.

16          We are not asking for special treatment.  What we are

17   asking ask is for compliance.  We are asking for compliance

18   with impartial hearing officer orders that have been ordered

19   under a federal law which provides for an automatic injunction;

20   not an injunction that takes place 30 days later, 35 days

21   later, 20 days later, it's an automatic injunction.  That's

22   number one.

23          Number two, these are disabled children who attend the

24   school.  These aren't vendors who do business with New York

25   City.  And to treat the students as simple vendors almost with

JAI8JUCC

1    New York City misses the mark.  These are obligations that

2    don't arise by contract.  These are obligations that arise by

3    federal law.

4              THE COURT:  Mr. Albert, you are suggesting by that

5    argument that the students are being prevented from receiving

6    the services that they require because they are not getting

7    paid as fast as you would like.  But that is, in fact, not the

8    case, isn't it?  The dispute here is not between the children

9    and the Department of Education, it's between the vendors and

10   the Department of Education.

11             MR. ALBERT:  Not yet.  Right now there is no claim

12   that the students have been threatened with being disenrolled

13   from the schools.  They are all attending the school; they are

14   all receiving their services.  However, in pendency cases there

15   is case law that says that harm is presumed.  There is no need

16   to show that there is irreparable harm in these cases.  The

17   fact that their pendency rights under a federal statute in and

18   of itself not only provides standing from just a legal point of

19   view, but gives them the right, the automatic right for that

20   relief.  This isn't, do they merit it, do they warrant it?

21   It's an automatic right.

22             Again, pendency is somewhat different than what Mr.

23   Rauchberg was talking about, in terms of an impartial hearing

24   officer rendering a decision regarding whether or not the

25   student's placement and program was appropriate.  That's a

JAI8JUCC

1    different issue.  But during that period of time there needs to

2    be stability for that student, and pendency includes not only

3    the provision of services but the payment for those services.

4    And at some point the student's school may not be so lenient

5    with respect to not receiving payment.

6         THE COURT:  I don't know whether it's in this case or

7    in a related case, but am I correct that the agreement between

8    the parents and the iBRAIN school provides that the child will

9    remain in the school so long as the pendency issue is pending?

10        MR. ALBERT:  Until such time it see essentially gets

11   resolved.  Let's put it that way.  I don't recall the specific

12   contractual language, but I believe you're correct, your Honor.

13   That's the essence.

14        THE COURT:  Mr. Rauchberg?

15        MR. RAUCHBERG:  I have not seen the contract for

16   '19-'20.  I did see the language in the '18-'19 school year.

17   My recollection is it wasn't the issue of pendency that needed

18   to be resolved.  I thought it was the entire litigation.  So as

19   long as the parent was maintaining the case, either before a

20   hearing officer or then appealing to the state review officer

21   or then appealing to federal or state court, as they are

22   entitled to do, they were entitled to remain at the school.

23   That is my recollection, but I would take that with a grain of

24   salt.

25        THE COURT:  OK.  Mr. Albert, anything else?

JAI8JUCC

1          MR. ALBERT:  I have nothing further.

2          THE COURT:  Why don't you folks give me five minutes

3     and I will be right back out.

4          (Recess)

5          THE COURT:  The application for a preliminary

6     injunction is denied.  It seems to me that at its core the

7     plaintiffs' argument is that the statute provides for an

8     automatic injunction with respect to pendency, and that

9     therefore means that payment for that pendency has to be made

10    immediately, or as soon as possible, or using some other

11    guideline undefined either in the statute or in case law or in

12    our common experience.

13         I do not find that plaintiffs' arguments are

14    meritorious that payment is required within some particular

15    amount of time.  All that pendency requires is that the child's

16    educational experience not be disrupted.  There is no dispute

17    here that the children's educational experience is not being

18    disrupted, and there is no credible evidence before me to

19    suggest that the city is not abiding by its obligation to fund

20    those students whose pendency has been determined.  In fact,

21    the evidence before me is exactly the opposite, which is to say

22    that the city has represented, both in arguments before me and

23    in affidavits that were submitted in connection with their

24    papers, that the city is paying for the children's education;

25    it is processing the invoices that it receives from the vendors

JAI8JUCC

1    in the ordinary course; it is not treating these children or

2    these vendors any differently than it treats any other children

3    who are receiving IDEA benefits or any other vendors who are

4    providing children who are receiving IDEA benefits.

5          Clearly, to my mind, there is no conflict here.  The

6    city is abiding by its obligations.  I am not going to require

7    them to do anything more for iBRAIN students than they do for

8    any other IDEA beneficiary.  And I find that, based on what I

9    have been told, that the amount of time within which they

10   actually are paying these vendors is not affecting the

11   children's rights in any way that creates a violation of the

12   IDEA, at least not on the record before me.

13         So with all of that, the application is denied.

14         What should we do next, Mr. Albert, with respect to

15   this matter?

16         MR. ALBERT:  With all due respect, your Honor, while

17   we are certainly disappointed in the determination, we would

18   ask if you could reconsider this and perhaps reconvene, if not

19   oral argument, perhaps a status conference in a couple of

20   weeks.  In a couple of weeks, if these payments have been made,

21   then we would certainly concur that the DOE has abided by its

22   obligations.  But at this point it's difficult for us to sit

23   idly by and say that the DOE can impose whatever obligations

24   and requirements and timeline to make a payment on behalf of a

25   pendency order.

JAI8JUCC

1       When the pendency order is -- it even goes before the

2  pendency order.  Pendency begins when the due process complaint

3  is filed.  These due process complaints are filed in July,

4  usually at least, typically, approximately when the academic

5  year begins, which is a July 1st date.  That's the trigger for

6  pendency, the due process complaint.  The impartial hearing

7  officer pendency order is when an impartial hearing officer is

8  appointed, accepts the case, is able to schedule a hearing,

9  which is all within the control of DOE.  When the hearing

10  officer then issues his or her pendency order, we have already

11  gone two months, in some respects three months beyond the date

12  when that due process complaint started, the time when pendency

13  was initiated, when it was triggered.

14       Again, the DOE really -- I understand that they can't

15  issue payment instantaneous, and again, to reiterate, we are

16  not asking for instantaneous payments, but here we are in the

17  middle of October and there is at least five parents who

18  started their process in July and there has been no resolution.

19       THE COURT:  You keep saying that and the city keeps

20  saying, no, we have paid them, or they are being processed, and

21  you have no information to contradict that.

22       MR. ALBERT:  I do, your Honor.  If you look at the

23  affidavits submitted by the DOE in this case, there is a

24  concession that, yes, we have not paid everything.

25       THE COURT:  Right.  But they are being processed, to

JAI8JUCC

1    the extent that they are not being disputed.

2            MR. ALBERT:  With the exception of that one student,

3    we would agree.  But I don't believe that that's an accurate

4    assessment of all the elements for the other five.

5            THE COURT:  Look, Mr. Albert, I am not going to

6    reconsider the decision that I made just about 45 seconds ago.

7    If you believe that there is an adequate basis for

8    reconsideration, then you should follow the local rules for a

9    motion to reconsider.

10           MR. ALBERT:  Thank you, your Honor.

11           THE COURT:  Anything else?

12           MR. ALBERT:  None from plaintiff.

13           THE COURT:  Mr. Rauchberg, procedurally, what should

14   we do with this matter?  We can come back in a few weeks for an

15   initial pretrial.

16           MR. RAUCHBERG:  It sounds like, even if we were to

17   update the Court or have a conference or a status letter, I am

18   not sure I am hearing that, if the payments are made, that

19   would lead to a withdrawal of the action.  Because, obviously,

20   that makes a lot of sense to me, and I would certainly support

21   that.  If I am hearing correctly, however, that that is

22   unlikely, then what I would like to do -- I am happy to have a

23   conference, but I think I would like to take some time to

24   consider a 12(b)(6) motion, if that's going to be necessary.

25   And if we are to do that, it seems this would be the

JAI8JUCC

1   appropriate time to ask the Court -- we were served a week ago

2   with the papers.  I would like a little more time to prepare a

3   response.  We can set that schedule now.

4           THE COURT:  OK.

5           MR. RAUCHBERG:  That would be fine with me.

6           THE COURT:  Schedule for what, for a premotion

7   conference or for a motion to dismiss?

8           MR. RAUCHBERG:  Your Honor, I am sorry that I didn't

9   look at your motion rules before coming in here today.

10          THE COURT:  I do have a premotion conference

11  requirement.

12          MR. RAUCHBERG:  If this is going to be necessary, and

13  again, it sounds like it is, then I would say, if we can put in

14  our letter maybe three weeks from today.

15          THE COURT:  OK.

16          MR. RAUCHBERG:  Then plaintiffs would have their

17  opportunity to oppose, and then we would be happy to conference

18  on the issue thereafter at the Court's convenience.

19          THE COURT:  In the meantime I encourage the parties to

20  have a discussion about what the facts are here and whether

21  this action is, strictly speaking, necessary going forward, but

22  I will leave that up to you all.

23          So three weeks from today, Mr. Rauchberg.

24          We are adjourned.

25          (Adjourned)